LEATRICE FELLNER, Plaintiff, *v.* WILLIAM ZUCKERBERG, Defendant.

Municipal Court of the City of New York, Borough of The Bronx, December 20, 1951.

*Leatrice Fellner,* plaintiff in person.

*Louis Drell* and *William Zuckerberg,* in person, for William Zuckerberg, defendant.

LORETO, J. The plaintiff has brought this action to recover a portion of a fee paid to her former attorney. By the terms of a written retainer dated July 13, 1951, the plaintiff paid to the defendant the entire fee of $275 in advance for legal fees and disbursements in an annulment suit he agreed to institute in her behalf.

It appears that a rift occurred between the plaintiff and her husband within the first few months of their marriage. Before preparing and serving a summons and complaint, the defendant attempted to bring the parties together; however, without success. Less than two months later and without the knowledge of her attorney, the parties became reconciled and left for their " second " honeymoon. Later the defendant learned of the reconciliation, having meanwhile placed the action on the calendar.

The plaintiff thereupon asked him to discontinue the suit and to return the fee paid to him or a portion thereof. He refused to do so; whereupon the plaintiff instituted this action.

As his defense, the defendant asserts that since he stood ready to represent the plaintiff in the matrimonial suit to its end and no fault with his services having been indicated, the plaintiff breached the contract between them by deciding to

drop the matrimonial suit, and therefore she as a defaulting party may not under the law of contracts recover. This defense states a principle of law applicable to contracts generally.

However, the ordinary contract involving a business or commercial transaction between parties must be distinguished from one between an attorney and his client whereby the latter engages the legal services of the former. By reason of the relation of the trust and confidence implicit in the relationship of attorney and client the dealings of the attorney with his client must be on a plane above those prevailing on the market place. And because of this, the client is at liberty to discharge his attorney at any time with or without cause, leaving the compensation for the attorney's services then to be fixed on a *quantum meruit* basis.

This principle has been enunciated in the leading case of *Martin* v. *Camp* (219 N. Y. 170) wherein SEABURY, J., writing for the court, after acknowledging that a contrary rule prevails in certain other jurisdictions, states: "The contract under which an attorney is employed by a client has peculiar and distinctive features which differentiate it from ordinary contracts of employment. * * * Notwithstanding the fact that the employment of an attorney by a client is governed by the contract which the parties make, the peculiar relation of trust and confidence that such a relationship implies injects into the contract certain special and unique features. * * * These cases and many others that might appropriately be cited to the same effect establish that while so far as the attorney is concerned the contract is entire and the attorney cannot recover unless he completely performs, the client with or without cause may terminate the contract at any time. * * * If the client has the right to terminate the relationship of attorney and client at any time without cause, it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract. If in such a case the client can be compelled to pay damages to his attorney for the breach of the contract, the contract under which a client employs an attorney would not differ from the ordinary contract of employment. In such a case the attorney may recover the reasonable value of the services which he has rendered but he cannot recover for damages for the breach of contract. *The discharge of the attorney by his client does not constitute a breach of the contract, because it is a term of such contract, implied from the peculiar relationship which the contract calls*

*into existence, that the client may terminate the contract at any time with or without cause."* (Pp. 172–174; italics supplied.)

The exceptions to this rule are set forth therein, as follows: "What has been said declaratory of the rule that the attorney is limited to a recovery upon a *quantum meruit* does not relate to a case where the attorney in entering into such a contract has changed his position or incurred expense, or to a case where an attorney is employed under a general retainer for a fixed period to perform legal services in relation to matters that may arise during the period of the contract." (P. 176.) See, also, *Greenberg* v. *Remick & Co.* (230 N. Y. 70) and *Stuart* v. *Trihas* (188 Misc. 116).

The case at bar clearly does not fall within any of these exceptions. Moreover, there is another factor which militates against the application of the proposition of contract law advanced by the defendant to this agreement of retainer. It is that the agreement was for legal services affecting the plaintiff's matrimonial status. Therefore, the subject matter of the retainer is one in which the State is interested. The preservation of the marital state concededly is a matter of public concern. The plaintiff's reconciliation with her husband and the abandonment of her annulment suit, a result although not achieved through the efforts of her attorney, is nonetheless a most commendable result — the desideratum of public policy. For such action the plaintiff cannot be charged with breach of her agreement with her attorney, a result which might follow if the contract were one involving a purely business or commercial matter. For while it is true that settlement of all disputes is desired, as to those affecting the marriage of its citizens the State has a special interest.

The fact that the attorney's compensation may be substantially reduced when the client decides to drop his lawsuit, is of no moment. The law will not constrain the client to continue with the litigation at the risk of being required to pay the attorney the full remuneration agreed upon if he does not go through with it.

In *Andrews* v. *Haas* (214 N. Y. 255) the opinion of CARDOZO, J., states the sweeping application of this principle: "The employment of a lawyer to serve for a contingent fee does not make it the client's duty to continue the lawsuit and thus increase the lawyer's profit. The lawsuit is his own. He may drop it when he will. Even an express agreement to pay damages for dropping it without his lawyer's consent, would be against

public policy and void. (*Matter of Snyder*, 190 N. Y. 66, 69.) The law will not imply an agreement which would be illegal, if it were express. It will not, under the coercion of damages, constrain an unwilling suitor to keep a litigation alive for the profit of its officers. (*Tenney* v. *Berger*, 93 N. Y. 524; *Matter of Dunn*, 205 N. Y. 398, 402; *Nutt* v. *Knut*, 200 U. S. 12, 21; *Mesa County Bank* v. *Berry*, 24 Colo. App. 487.) The notion that such a thing is possible betrays a strange misconception of the function of the legal profession and of its duty to society. When the defendants abandoned the action, they became liable to the plaintiff for the value of the services then rendered. That is the measure of their liability and of his right. '' (Pp. 258–259.)

The court does not consider the cases cited by the defendant to be either controlling or applicable. The case of *Riehl* v. *Levy* (43 Misc. 59) a decision of the Appellate Term, First Department, is in point and sustains the defendant's position. However, this court is constrained to follow the law set down by the Court of Appeals in *Martin* v. *Camp* (*supra*). The case of *Rimos* v. *Rimos* (81 N. Y. S. 2d 347) is not applicable because it did not involve a plenary suit but a motion in a matrimonial action. *Matter of Secrest* (129 Misc. 793) also is not applicable since it involved a summary application seeking the refund of moneys by motion unrelated to any pending action.

On all the evidence, the court finds that the reasonable value of the legal services rendered by the defendant inclusive of disbursements incurred is the sum of $150. Accordingly, the court finds in favor of the plaintiff in the sum of $125, for which judgment may be entered. Fifteen days' stay.